Filed 12/1/22  P. v. Marcus CA2/1
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B300883 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA071844) |
| v. | |
| ZECOREY LAMONT MARCUS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hector M. Guzman, Judge.  Reversed.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri, Michael Katz, David E. Madeo and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

In 2019, the trial court summarily denied defendant and appellant Zecorey Lamont Marcus's petition under former Penal Code[1] section 1170.95 for resentencing on his murder conviction. In a previous opinion, we affirmed, reasoning that the jury's finding of a felony-murder special circumstance (§ 190.2, subd. (a)(17)) made Marcus ineligible for resentencing as a matter of law.

The Supreme Court subsequently vacated our decision and ordered us to reconsider the case in light of its decision in *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). Both Marcus and the Attorney General agree, as do we, that we must reverse the denial of Marcus's petition and remand the case for further proceedings in the trial court.

### FACTS AND PROCEEDINGS BELOW

The facts of the case are discussed below as described in our opinion in Marcus's direct appeal (*People v. Galloway* (June 8, 2012, B232165) [nonpub. opn.] (*Galloway*)).

### A. *The Robbery of Pedro Guerrero in May 2008*

"Anna Sanchez, a friend of defendants Galloway and Marcus, testified that she drove defendants to a convenience store in Gardena and waited for them in her car while they went into the store to buy rolling papers for marijuana and orange juice. After a short time, Galloway came out of the store and told Sanchez to park her car across the street because he was going to rob a man he had seen in the store cashing a check. Moments

---

[1] Subsequent statutory references are to the Penal Code.

after Sanchez moved her car, defendants came running toward her. Galloway was holding a black revolver. Defendants jumped into Sanchez's car and Galloway told Sanchez: 'Go, go, go.' Sanchez drove away as Galloway handed the gun to Marcus in the backseat. She asked them what happened 'and they said they robbed the man that was in the store cashing his check.' Sanchez identified defendants from a surveillance video shot from within the store.

"Pedro Guerrero testified that he went to a store in Gardena to cash a check for $450.00. As he sat in his car, putting away his money, two men walked up. One man pointed a black gun at Guerrero's head. 'They told me to give them the money or that they would kill me,' Guerrero testified. Guerrero gave the money to the man with the handgun. He did not report the robbery to police because he was afraid but he told the storekeeper about it. A week later the police located Guerrero and showed him photographic lineups and he identified a photograph of Galloway as the man who robbed him with a handgun." (*Galloway*, *supra*, B232165.)

### B.  *The Murder of Hae Sook Roh in May 2008*

"Five days after the Guerrero robbery, at approximately 6:45 p.m., Arthenia Thomas heard gunfire coming from the direction of a T-shirt shop in Gardena and saw two men running from the shop and down the street toward a restaurant where she lost sight of them. Her only description of the two men was that they were wearing black 'hoodies' and had bandanas over their faces. A few minutes later a silver four-door car drove 'really fast' out of the restaurant parking lot. Because the windows were tinted, Thomas could not tell how many people were in the car.

Thomas testified that the car depicted in People's exhibit 4 looked like the car she saw leaving the parking lot.

"When the police responded to the shooting, they found the body of Hae Sook Roh, who had worked at the T-shirt shop, lying dead behind the counter near the cash register.

"The prosecution showed the jury an audio and video recording from a surveillance camera in the T-shirt shop. The video showed a black male with a gun in his left hand entering the area in front of the cash register. The man wore white pants, a long white T-shirt and an open waist-length jacket. He had a white cloth tied across his face below his eyes. The bottom left hand portion of the video showed the pant leg and shoe of a second person. The audio portion of the tape contained the voice of the man with the gun saying: 'Give it up. Give it up. Give me the money.' A second voice said[,] 'Give him the money' and then the gunman fired at Roh saying, 'Bitch. Give it up.' He repeated[,] 'Give it up' and then shot Roh two more times, grabbed the money from the register and ran. The gun was not recovered. The take from the robbery-murder was approximately $35.

"Sanchez testified that she was at Galloway's house on the day of the murder. When it started to get dark, Galloway went to the trunk of his mother's car and changed into basketball shorts, a white T-shirt and waist-length jacket. He then began waiting in front of the house. A gray Chevrolet Impala with tinted windows pulled up in front of the house. Someone inside the car opened the back door, and as Galloway got in, Sanchez saw Marcus lean over. Sanchez identified the car shown in the People's exhibit 4 as the car she saw that evening. The same car returned to Galloway's house 20 to 30 minutes later

and Galloway got out.  Sanchez observed that Galloway was breathing heavily, his palms were sweating and he was acting 'like he was nervous and scared.'  Galloway told her that 'he shot a lady at the T-shirt place.'  He 'started laughing like it was funny' and said 'the bitch wouldn't die.  So he just had to keep shooting her.'  Sanchez asked Galloway why he shot the lady and Galloway replied that he was mad because he wanted to rob the store but 'right before he walked in, she dropped the money [in the floor safe] [a]nd so he shot her.'

"A few days later Galloway showed Sanchez a YouTube video of the murder and robbery at the T-shirt shop.  He laughed again while he watched it.  Sanchez recognized Galloway on the video because he was wearing the same clothes he wore when he left his mother's house the evening of the murder.  She also recognized the gun in the video as the gun Galloway had used in the robbery of Pedro Guerrero."  (*Galloway*, *supra*, B232165.)

## C.     *The Defendants' Custodial Statements*

"After defendants were arrested, they were seated next to each other on a bench in a hall of the jail.  The bench had a hidden recording device.  The prosecution played the recording of the defendants' conversation to the jury.  In that conversation Galloway told Marcus that the police showed him a picture of Marcus inside the store just before the Guerrero robbery.  Marcus acknowledge[d] he [would] have to serve 15 years for the robbery but told Galloway that if he got bailed out 'I'm gone.'  Galloway told Marcus not to worry because he admitted the robbery and told the police Marcus had nothing to do with it and that he didn't even know Marcus.  Later in the conversation, Galloway admitted his involvement in the murder.  Marcus also admitted being at the scene of the murder, noting that the video

5

showed him wearing the same shoes that he was wearing when he was arrested." (*Galloway*, *supra*, B232165.)

### D. *The Credibility of Sanchez*

"Sanchez admitted she played a role in the robbery of Guerrero, that she pleaded guilty to that crime, that she was in custody at the time of her trial testimony and that she was receiving lenient treatment in her sentencing in exchange for her testimony against defendants. She also admitted that she had previously been convicted of forgery and the unlawful taking of a motor vehicle.

"Sanchez further admitted that she had been a regular user of marijuana for six to nine months prior to the murder of Roh; that she 'smoke[d it] every day'; and that she had smoked marijuana just before the Guerrero robbery and was feeling 'mellow' at the time. Sanchez testified that she smoked a type of marijuana known as 'Chronic' which, she agreed, is a 'particularly potent' and 'intense' form of the drug. In addition to smoking marijuana, Sanchez stated that on weekends she used Ecstasy. ([This court took] judicial notice that the T-shirt robbery and murder were not committed on a weekend.) She testified that she stopped using any drugs after May 12, 2008, the date of the robbery-murder.

"The defense called a forensic toxicologist who testified that in his opinion someone who smoked Chronic every day over a six- to nine-month period would suffer from confusion, delusion and 'disoriented perception.' " (*Galloway*, *supra*, B232165.)

A jury convicted Marcus of one count of first degree murder (§ 187, subd. (a)), and found true a felony-murder special circumstance allegation (§ 190.2, subd. (a)(17)). The jury also convicted him of two counts of robbery (§ 211), and

found true allegations of gang and firearm enhancements on all three counts. The court imposed a sentence of life without the possibility of parole for murder, plus an additional 25 years to life for the firearm enhancement. On appeal, we struck the gang enhancements for lack of substantial evidence, as well as the firearm enhancements, which were invalid without a gang enhancement (see § 12022.53, subd. (e)(1)(A)), but we otherwise affirmed the judgment. (See *Galloway*, *supra*, B232165.)

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which abolished the natural and probable consequences doctrine in cases of murder, and limited the application of the felony-murder doctrine. (See *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.) Under the new law, a conviction for felony murder requires proof that the defendant was either the actual killer, acted with the intent to kill, or "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3).) The legislation also enacted former section 1170.95, which established a procedure for vacating murder convictions for defendants who could no longer be convicted of murder because of the changes in the law and resentencing those who were so convicted. (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.) In 2021, the Legislature enacted Senate Bill No. 775 (2021−2022 Reg. Sess.) (Stats. 2021, ch. 551), which clarified and amended certain aspects of Senate Bill No. 1437. The Legislature subsequently renumbered former section 1170.95 as section 1172.6 without further substantive change. (See Stats. 2022, ch. 58, § 10.)

Marcus filed a petition for resentencing on February 26, 2019. The trial court appointed counsel to represent Marcus and forwarded the petition to the district attorney. After obtaining

briefing from both parties, the trial court denied the petition on the ground that the record in the case showed as a matter of law that Marcus was not entitled to relief. The court found that the facts of the case, as described in our prior opinion, "establish[ ] that [Marcus] was, at a minimum, a major participant in the murder and acted with reckless indifference to human life during the course of the murder."

## DISCUSSION

In our prior opinion in this case, we affirmed the denial of Marcus's resentencing petition on the ground that the record showed as a matter of law that he was ineligible for relief. We noted that a felony-murder special-circumstance finding requires proof at a minimum that the defendant acted "with reckless indifference to human life and as a major participant" (§ 190.2, subd. (d)) in the underlying felony. This is identical to the showing required for felony murder under the law as amended by Senate Bill No. 1437. (See § 189, subd. (e)(3).) To be eligible for resentencing, a defendant must first make a prima facie case that he "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective" as a part of Senate Bill No. 1437. (§ 1172.6, subd. (a)(3).) Marcus could not meet this requirement because the special-circumstance finding meant that he remained guilty of murder despite the change in the law.

The Supreme Court in *Strong* agreed with us that a prior special-circumstance finding would ordinarily disqualify a defendant from resentencing under section 1172.6. (See *Strong*, *supra*, 13 Cal.5th at p. 715.) But the court held that an exception applied to defendants like Marcus who were convicted of special-circumstance felony murder before the court issued its opinions

8

in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522, clarifying the meaning of "major participant" and "reckless indifference to human life." (*Strong, supra*, at pp. 706–707.) The decisions in *Banks* and *Clark* "represent the sort of significant change that has traditionally been thought to warrant reexamination of an earlier-litigated issue" that the principle of issue preclusion would otherwise forbid. (*Id.* at p. 717.) For this reason, the court concluded that a pre-*Banks*/*Clark* felony-murder special-circumstance finding does not disqualify a defendant from resentencing relief under section 1172.6. (*Strong, supra*, at p. 720.)

We agree with both Marcus and the Attorney General that, under *Strong*, there is no basis for denying Marcus's petition at the prima facie stage. At this stage, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' ([*People v.*] *Drayton* [(2020)] 47 Cal.App.5th [965,] 980.) . . . [T]he 'prima facie bar was intentionally and correctly set very low.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 972.) The court, in evaluating whether the defendant has made a prima facie case, may not "independently examine[ ] the record and determine[ ], applying the *Banks* and *Clark* standards, that sufficient evidence supports the earlier findings." (*Strong, supra*, 13 Cal.5th at p. 719.)

Because Marcus has made a prima facie case for resentencing, the trial court must issue an order to show cause and conduct further proceedings in the case. (See § 1172.6, subd. (c).)

9

## DISPOSITION

The trial court's order denying the petition for resentencing is reversed.  On remand, the trial court shall issue an order to show cause and conduct further proceedings as specified in section 1172.6.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


WEINGART, J.

10